SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 06 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION
OCTOBER 2011 SESSION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 1:11cr35 |
| v. | |
| ROBERTO RICIERI RIBEIRO,<br>MARK RICHARD SPEARS,<br>TIMOTHY ROSS STEWART,<br>BELCORP OF AMERICA, INC.,<br>PLAYERS INTERNATIONAL SERVICE<br>CORPORATION | **SEALED**<br>Title 18 U.S.C. § 371<br>Title 18 U.S.C. § 1956(h)<br>Title 18 U.S.C. § 1341<br>Title 18 U.S.C. § 1343<br>Title 18 U.S.C. § 2342<br>Title 26 U.S.C. § 7201<br>Title 18 U.S.C. § 1956 |

## INDICTMENT

The Grand Jury charges that:

### COUNT 1
(18 U.S.C. § 371)

(Conspiracy to:  Violate the Contraband Cigarette Trafficking Act; Commit Mail Fraud; Commit Wire Fraud; Evade the Federal Excise Tax on Cigarettes; Falsify, Conceal Or Cover Up By Trick, Scheme Or Device a Material Fact In a Matter Within The Jurisdiction Of a Federal Agency).

1.    From in or about October, 2006, and continuing up to and including in or about June, 2010, in the Western District of Virginia and elsewhere, the defendants, ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS, TIMOTHY ROSS STEWART, BELCORP OF AMERICA, INC. and PLAYERS INTERNATIONAL SERVICE CORPORATION, knowingly and willfully conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to knowingly:

USAO#:2011R00159

1

a.      Make a false statement or representation with respect to information required by law to be kept in the records of a person who ships, sells, or distributes in excess of 60,000 cigarettes in a single transaction, in violation of Title 18 United States Code § 2342 (b);

b.      With intent to defraud, having devised or intending to devise a scheme or artifice to defraud, and for obtaining money or property by means of false or fraudulent pretenses, representations or promises, use the United States mail and deposit or cause to be deposited any matter or thing whatever to be sent and delivered by the Postal Service or by any private or commercial interstate carrier according to the direction thereon, to execute the scheme or artifice to defraud and obtain money or property thereby, in violation of Title 18 United States Code § 1341;

c.      With intent to defraud, having devised or intending to devise a scheme or artifice to defraud, and for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmit or cause to be transmitted a wire communication in interstate commerce to execute the scheme or artifice to defraud and obtain money or property thereby, in violation of Title 18 United States Code § 1343;

d.      With intent to defraud the United States, willfully evade the Federal Cigarette Excise Tax or attempt in any manner to willfully evade or defeat such tax or the payment thereof, in violation of Title 26 United States Code § 5762 (a);

e.      Make a materially false, fictitious, or fraudulent statement and representation in a matter within the jurisdiction of a Federal agency, to wit, the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the

Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau (TTB), in

violation of Title 18 United States Code § 1001.

## INTRODUCTION

1. The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), administers and

enforces the Contraband Cigarette Trafficking Act and ATF regulations pertaining to the

shipment, sale or distribution of cigarettes.  The Alcohol and Tobacco, Tax and Trade

Bureau (TTB) has been delegated, by Congress, to administer and enforce all laws and

regulations governing the federal excise tax (FET) due, as well as the recordkeeping

procedures, for all domestic tobacco manufacturers. TTB is responsible for collecting the

FET due by cigarette manufacturers. The FET pre-April 1, 2009 was approximately

$3.90 per carton.  The FET post April 1, 2009 is approximately $10.10 per carton.

2. Federal law requires that any person who sold, shipped, transferred or otherwise disposed

of more than 10,000 cigarettes in a single transaction maintain such records of the

transaction as the Attorney General may prescribe by rule or regulation.  ATF regulations

require that any person who sold, shipped, transferred or otherwise disposed of more than

60,000 cigarettes in a single transaction maintain records of the transaction that state the

full name of the purchaser (or the recipient if there is no purchaser), the street address

(including city and state) to which the cigarettes were destined and the quantity of

cigarettes involved in the transaction.

3. Proper and truthful record keeping and documentation as mandated by federal law and

regulations is essential to enable ATF to perform its function with regard to the sale,

shipment and distribution of cigarettes.  False record keeping impedes performance of

ATF's function and unduly hinders the effective administration of justice.

4.    The Alcohol and Tobacco Tax and Trade Bureau (TTB) administers and enforces laws and TTB regulations pertaining to record keeping of operations and transactions by cigarette manufacturers, and collection of cigarette excise taxes.

5.    Proper and truthful record keeping and documentation as mandated by federal law and regulations is essential to enable TTB to perform its function with regard to record keeping of operations and transactions by cigarette manufacturers, and collection of cigarette excise taxes properly due and owing.  False record keeping impedes performance of TTB's function and unduly hinders the effective administration of justice.

6.    In 1998, forty-six states and six territories entered into a Master Settlement Agreement (MSA) with several major cigarette manufacturers.  The parties intended the settlement to end further litigation between state governments and cigarette manufacturers.  As a part of the settlement, the states released the manufacturers from past and future liability in exchange for the manufacturers' agreement to abide by advertising and promotional restrictions and to make annual monetary payments to the states based on annual cigarette sales.  Under the settlement, the manufacturers' payments to the States were subject to reduction based on lost market share, but the payment was not reduced if the State enacted and enforced a law that required cigarette manufacturers that were not parties to the Master Settlement Agreement (Non-Participating Manufacturers) to make specified annual deposits into an escrow fund based on the number of the manufacturer's cigarettes sold in the state, as measured by state excise taxes applied to such cigarette sales.  Such escrow deposits were intended to establish a source of payment for smoking related health costs paid by the states and to prevent such manufacturers from deriving large, short-term profits and then becoming judgment-proof before liability may arise.  The

states' laws also required that such manufacturers file annual certifications truthfully stating that the required escrow deposits were made.

7.      The laws of Kentucky, North Carolina, South Carolina and Tennessee require that cigarette manufacturers that were not parties to the Master Settlement Agreement (Non-Participating Manufacturers) make specified annual deposits into an escrow fund based on the number of the manufacturer's cigarettes sold in the state, as measured by state excise taxes applied to such cigarette sales, and file annual certifications truthfully stating that the required escrow deposits were made.

8.      The laws of Kentucky, North Carolina, South Carolina and Tennessee require that persons authorized to affix State excise tax or revenue stamps on cigarette packs, or otherwise account for such tax, regularly and truthfully report to the State the number of cigarette packs to which tax stamps were affixed or otherwise subjected to the cigarette tax.  Such reports establish the amount that Non-Participating Manufacturers are to deposit into an escrow account for the benefit of the State where the manufacturer's cigarettes were sold.

9.      The Fair and Equitable Tobacco Reform Act (FETRA) of 2004 allowed the United States Department of Agriculture (USDA) to assess a "buy out fee" for cigarettes sold in the United States.  The USDA fee for 2007 was $0.50 per carton, for 2008 was $0.55 per carton, for 2009 $0.55 per carton, and for 2010 was $0.60 per carton, and is projected in 2011to be $0.63 per carton.  The USDA uses the returns provided to TTB regarding removals of tobacco products from internal revenue bond as a basis for the assessment of this fee.

10.    One standard pack of cigarettes contains 20 cigarettes.  One standard carton of cigarettes contains 10 packs of cigarettes.  A "master" or "full" case of cigarettes contains 60 cartons (12,000 cigarettes), while a "store" or "half" case contains 30 cartons of cigarettes (6,000 cigarettes).

11.    "Cut rag tobacco" is raw tobacco that has been cut into fine strips for processing into cigarettes, and is supplied to cigarette manufacturers in large cartons known as "coffins", approximately 132 of which will fit in a tractor-trailer.

12.    At all times material to this Indictment:

a.    BELCORP OF AMERICA, INC. (also referred to herein as "BELCORP"), dba Phoenix Industria e Comercio de Tabacos, was a corporation organized under the laws of Florida with a place of business at 8150 NW 64th St, Miami, Florida. BELCORP was originally incorporated in Florida as Belmont Trading Corp in November 1993. A name change was filed on April 27, 1998, changing the name to BELCORP OF AMERICA. The name change was signed by Roberto R. RIBEIRO as President/Director.

b.    PLAYERS INTERNATIONAL SERVICE CORPORATION was a corporation organized under the laws of Florida with a place of business listed as 4101 NW 25th St, Miami, Florida. The Articles of Incorporation were filed in October 2005 by Roberto RIBEIRO as President and Registered Agent.

c.    During the times alleged in this Indictment, BELCORP operated cigarette manufacturing facilities located at 1759 Northwest 79th Avenue, Doral, FL 33126 and 8150 Northwest 64th Street, Miami, Florida 33166.

d.    ROBERTO RICIERI RIBEIRO owned and operated BELCORP, and was

President/Director and the Registered Agent for BELCORP. RIBEIRO was the sole shareholder in BELCORP and other corporate entities, and acted on their behalf.

e.    MARK RICHARD SPEARS held the title of Executive Vice President of BELCORP, and acted on behalf of BELCORP in its legal and illegal business affairs.

f.    TIMOTHY MARK STEWART held the title of Executive Vice President of BELCORP, and acted on behalf of BELCORP in its legal and illegal business affairs.

g.    BELCORP obtained a permit to manufacture tobacco products from the Alcohol and Tobacco Tax and Trade Bureau ("TTB") of the United States Department of the Treasury on April 7, 2005.

h.    BELCORP first reported manufacturing activities on February 18, 2008. BELCORP first reported removals from the manufacturing facility in March 2008.

i.    BELCORP, as a licensed importer and manufacturer of cigarettes, was under obligation to file regular reports to TTB disclosing the amount of tobacco products that were removed from their facilities and the amount of Federal Excise Tax (FET) due for those removals.

j.    BELCORP was a Non-Participating Manufacturer (NPM) under the Master Settlement Agreement, obligated to make specified annual deposits into an escrow fund based on the number of the manufacturer's cigarettes sold in the state, as measured by state excise taxes applied to such cigarette sales, and file

annual certifications truthfully stating that the required escrow deposits were made.

## WAYS, MEANS AND MANNER OF THE CONSPIRACY

13. It was a part of the conspiracy to evade Federal excise taxes and State escrow deposits applicable to the manufacture, distribution and sale of cigarettes manufactured by BELCORP OF AMERICA, INC.

14. It was a further part of the conspiracy that the defendants fraudulently failed to report to TTB all cigarettes manufactured by BELCORP OF AMERICA, INC. or withdrawn from the manufacturing plant, and therefore subject to the Federal cigarette excise tax, resulting in the evasion of Federal cigarette excise taxes.

15. It was a further part of the conspiracy that, to facilitate and conceal BELCORP's tax evasion, the defendants obtained raw tobacco used to manufacture cigarettes without required invoices, shipping documents and/or other paper work and, in partial exchange for the raw tobacco, traded manufactured cigarettes using false invoices or no invoices in violation of the Contraband Cigarette Trafficking Act, Title 18 United States Code § 2342(b).

16. It was a further part of the conspiracy that the defendants shipped cigarettes to locations without invoices and concealed the cigarettes to evade the Federal cigarette excise tax increase effective April 1, 2009, and moved the cigarettes back into the stream of commerce after the increase. These actions by the defendants resulted in additional evasion of Federal cigarette excise taxes.

17. It was a further part of the conspiracy that several of the defendants sold cigarettes to a Cooperating Entity located in South Carolina, hereinafter CE #1, using false invoices or

no invoices.

18.    It was a further part of the conspiracy that several of the defendants sold cigarettes "off-invoice" to CE #1, and CE #1 reported only the "on-invoice" sales to the States of South Carolina and North Carolina, under-reporting sales of BELCORP cigarettes into those States, evading State cigarette excise taxes, and reducing BELCORP's required escrow deposits during the course of the conspiracy.

19.    It was a further part of the conspiracy that the defendants sold cigarettes to a Cooperating Entity located in the Western District of Virginia, hereinafter CE #2, pursuant to an agreement that CE #2 would fraudulently under-report sales of BELCORP cigarettes into the States of Kentucky, North Carolina, South Carolina and Tennessee, resulting in a reduction of BELCORP OF AMERICA's required escrow deposits during the course of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants committed, among others, the following overt acts in the Western District of Virginia and elsewhere:

### In 2007-2008 RIBEIRO, BELCORP OF AMERICA And Another Corporate Entity Sold Cigarettes To CE #1, Using False Invoices Or No Invoices, To Evade State Excise Taxes And Escrow Deposits

20.    CE #1 is owned by Cooperating Individual #1, hereinafter CI #1, and is engaged in the wholesale distribution of cigarettes in North Carolina and South Carolina.

21.     Beginning in 2006, CE #1 purchased cigarettes from BELCORP OF AMERICA, INC.,

and other corporate entities owned, controlled, or participated in by ROBERTO RICEIRI

RIBEIRO.

22.     In or about October of 2006, RIBEIRO and CI #1 agreed that BELCORP would sell

cigarettes to CE #1 using invoices that falsely stated the quantity sold, or with no invoice

at all.  The agreement was part of a scheme to evade North and South Carolina cigarette

excise taxes and falsely report the quantity of sales of BELCORP cigarettes into those

States, thus reducing BELCORP's annual escrow deposit requirement.  The difference

between the quantity of cigarettes actually shipped and what was reflected on the invoice

would be paid by CI #1 to RIBEIRO in cash or other items of value at a reduced price per

carton.

23.     In 2007-2008, pursuant to the agreement, RIBEIRO sold 504 cases of BELCORP

cigarettes to CE #1 with no invoices or falsified invoices, of which CE #1 resold 312

cases into North and South Carolina that were not reported to such States, allowing

BELCORP to evade over $154,612.00 in required annual escrow deposits.

24.     During the period 2006 to 2008, in furtherance of the conspiracy, false reports were sent

to the States by use of the United States mail, documents were sent by facsimile

transmission, and RIBEIRO, CI #1 and other co-conspirators communicated by the use of

a telephone in interstate commerce.

25.     The above described false invoice and/or off invoice transactions and false reports to the

States that occurred during the period 2007-2008 are detailed below:

| Date | Invoice Number(s) | Total Cases Received by CE #1 | Total Cases Invoiced to CE #1 | Off Invoice Cases not reported to SC by CE #1 | Date False Report to South Carolina Filed by CE #1 |
|---|---|---|---|---|---|
| 2/5/2007 | FB-033 | 48 | 24 | 24 | 3/19/2007 |
| 2/12/2007 | FB-036 | 99 | 75 | 24 | 3/19/2007 |
| 3/7/2007 | FB-043 | 95 | 71 | 24 | 4/20/2007 |
| 4/10/2007 | FB-045 | 67 | 43 | 24 | 5/18/2007 |
| 6/19/2007 | FB-057 | 139 | 115 | 24 | 7/19/2007 |
| 8/7/2007 | FB-0582 | 54 | 30 | 24 | 9/19/2007 |
| 9/3/2007 | FB-0583 | 305 | 281 | 24 | 10/19/2007 |
| 11/5/2007 | FB-064 | 170 | 146 | 24 | 12/19/2007 |
| **Totals 2007:** | | **977** | **785** | **192** | |
| 2/6/2008 | FB-49 | 78 | 30 | 48 | 3/19/2008 |
| 6/12/2008 | FB-73163 | 72 | 24 | 48 | 7/19/2008 |
| 8/11/2008 | FB-73353 | 184 | 160 | 24 | 9/19/2008 |
| 11 or 12/2008 | off invoice | 192 | 0 | 192 | Unknown |
| **Totals 2008:** | | **526** | **214** | **312** | |
| **Total 2007-2008** | | **1503** | **999** | **504** | |

### In 2008 and 2009 RIBEIRO, SPEARS and STEWART Conspired to Evade State Escrow Deposits

26.     In or about January 2008, RIBEIRO, SPEARS and STEWART agreed to sell BELCORP cigarettes to CE #2 at a lower cost, with the understanding that CE #2 would under-report re-sale of this product into the states of Kentucky, Tennessee, South Carolina and North Carolina. Pursuant to the agreement, SPEARS and RIBEIRO directed CE #2 to report only 5%-20% of the re-sales into the various states, enabling BELCORP OF AMERICA, INC. to evade required State escrow deposits.

27.     On or about January 11, 2008, SPEARS spoke by telephone with an ATF confidential informant and agreed to sell BELCORP cigarettes to CE #2. As a part of the telephone discussion, SPEARS directed that CE #2 under-report sales into Tennessee.

Implementing the discussion, on or about January 15, 2008, an invoice was sent from Dade County, Florida to CE #2 and received in the Western District of Virginia. The cigarettes described in the invoice were delivered to the Western District of Virginia and the invoice was paid.

28. On or about January 28, 2008, SPEARS and STEWART met with CI #2 and other representatives of CE #2 in the Western District of Virginia and discussed details of the conspiracy.

29. On or about July 22, 2008, RIBEIRO and SPEARS met with representatives of CE #2 in the Western District of Virginia and discussed details of the conspiracy.

30. In 2008 and 2009, BELCORP, PLAYERS INTERNATIONAL SERVICE CORPORATION, RIBEIRO, SPEARS, and STEWART made or caused to be made multiple deliveries of cigarettes to CE #2 in the Western District of Virginia, and sent multiple invoices by facsimile transmission to CE #2 in the Western District of Virginia. The deliveries were made in the Western District of Virginia on numerous occasions by trucks registered to PLAYERS INTERNATIONAL SERVICE CORPORATION.

31. Pursuant to the directions of the defendants, in 2008 and 2009 CE #2 filed false reports with the States of Kentucky, South Carolina, North Carolina and Tennessee by U.S. mail, as follows:

| 2008 FALSE REPORTING TO THE STATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2008 | | KY | NC | SC | TN | Total | Reported % |
| Jan | Stamped/Taxed | 2,280 | 0 | 0 | 7680 | 9,960 | |
| | Reported | 0 | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | | | |
| Feb | Stamped/Taxed | 1,380 | 0 | 0 | 10565 | 11,945 | |
| | Reported | 264 | 0 | 0 | 528 | 792 | 6.6% |
| | | | | | | | |
| March | Stamped/Taxed | 1560 | 0 | 0 | 12827 | 14,387 | |
| | Reported | 126 | 0 | 0 | 564 | 690 | 4.8% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| April | Stamped/Taxed | 5640 | 0 | 0 | 16444 | 22,084 | |
| | Reported | 186 | 0 | 0 | 819 | 1,005 | 4.6% |
| | | | | | | | |
| May | Stamped/Taxed | 66779 | 0 | 0 | 17821 | 84,600 | |
| | Reported | 6282 | 0 | 0 | 3710 | 9,992 | 11.8% |
| | | | | | | | |
| June | Stamped/Taxed | 16961 | 0 | 0 | 27991 | 44,952 | |
| | Reported | 1726 | 0 | 0 | 2435 | 4,161 | 9.3% |
| | | | | | | | |
| July | Stamped/Taxed | 36260 | 0 | 0 | 27373 | 63,633 | |
| | Reported | 3692 | 0 | 0 | 5742 | 9,434 | 14.8% |
| | | | | | | | |
| August | Stamped/Taxed | 45119 | 0 | 0 | 35484 | 80603 | |
| | Reported | 2185 | 0 | 0 | 7127 | 9,312 | 11.6% |
| | | | | | | | |
| Sept | Stamped/Taxed | 100094 | 0 | 0 | 23430 | 123524 | |
| | Reported | 12120 | 0 | 0 | 4093 | 16,213 | 13.1% |
| | | | | | | | |
| Oct | Stamped/Taxed | 46375 | 0 | 2640 | 17837 | 66852 | |
| | Reported | 4743 | 0 | 0 | 3579 | 8,322 | 12.4% |
| | | | | | | | |
| Nov | Stamped/Taxed | 26934 | 7500 | 7080 | 28665 | 70179 | |
| | Reported | 4507 | 0 | 0 | 3846 | 8,353 | 11.9% |
| | | | | | | | |
| Dec | Stamped/Taxed | 56880 | 0 | 10740 | 28593 | 96213 | |
| | Reported | 11556 | 0 | 480 | 7738 | 19,774 | 20.6% |

| 2009 FALSE REPORTING TO THE STATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2009 | | KY | NC | SC | TN | Total | Reported% |
| Jan | Stamped/Taxed | 27180 | 0 | 3000 | 22,916 | 53096 | |
| | Reported | 0 | 0 | 300 | 6,926 | 7226 | 13.6% |
| | | | | | | | |
| Feb | Stamped/Taxed | 25830 | 0 | 7980 | 44,581 | 78391 | |
| | Reported | 0 | 0 | 1995 | 9825 | 11820 | 15.1% |
| | | | | | | | |
| March | Stamped/Taxed | 28140 | 0 | 5100 | 20,867 | 54107 | |
| | Reported | 0 | 0 | 1020 | 4175 | 5195 | 9.6% |
| | | | | | | | |
| April | Stamped/Taxed | 0 | 0 | 5940 | 34,189 | 40129 | |
| | Reported | 0 | 0 | 1188 | 6866 | 8054 | 20.1% |
| | | | | | | | |
| May | Stamped/Taxed | 0 | 0 | 12060 | 25,645 | 37705 | |
| | Reported | 0 | 0 | 2412 | 3874 | 6286 | 16.7% |
| | | | | | | | |
| June | Stamped/Taxed | 0 | 3318 | 24858 | 27,358 | 55534 | |
| | Reported | 0 | 0 | 4968 | 5556 | 10524 | 19.0% |

| | | | | | | | |
|------|---------------|---|------|-------|--------|-------|--------|
| July | Stamped/Taxed | 0 | 0 | 26410 | 28,495 | 54905 | |
| | Reported | 0 | 0 | 5396 | | 5396 | 9.8% |
| | | | | | | | |
| Aug | Stamped/Taxed | 0 | 0 | 18780 | 19116 | 37896 | |
| | Reported | 0 | 0 | 17700 | 5735 | 23435 | 61.8% |
| | | | | | | | |
| Sept | Stamped/Taxed | 0 | 0 | 0 | 667 | 667 | |
| | Reported | 0 | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | | | |
| Oct | Stamped/Taxed | 0 | 0 | 0 | 80 | 80 | |
| | Reported | 0 | 0 | 0 | 80 | 80 | 100.0% |
| | | | | | | | |
| Nov | Stamped/Taxed | 0 | 7500 | 0 | 4374 | 11874 | |
| | Reported | 0 | 0 | 0 | 4374 | 4374 | 36.8% |
| | | | | | | | |
| Dec | Stamped/Taxed | 0 | 0 | 0 | 0 | 0 | |
| | Reported | | | | | 0 | 0.0% |

### In 2008 and 2009 RIBEIRO, SPEARS And STEWART
### Conspired To Evade Federal Excise Taxes, MSA Payments, and USDA Fees

### The Cut Rag Scheme to Evade FET and MSA

32.     On July 22, 2008, RIBEIRO and SPEARS met with CI #2 in the Western District of

Virginia, and RIBEIRO suggested purchasing raw "cut rag" (processed tobacco used in

the manufacture of cigarettes) from CE #2 to cover up the number of cigarettes being

manufactured, because the TTB relied on the weight of raw tobacco to determine the

quantity of cigarettes produced by a manufacturer.  Discussions continued in 2008, and

on November 20, 2008, SPEARS and STEWART met with CI #2 in the Western District

of Virginia to further discuss details of the plan.  RIBEIRO, BELCORP, SPEARS, and

STEWART formulated a scheme to purchase tractor-trailer loads of cut rag tobacco from

CE #2.  The agreement was that the cut rag would be sold to BELCORP at the "off-the-

books" price of $254,000.00 per load, when fair market value for a load of tobacco in

normal commerce was $53,000.00.   The use of "off-the-books" cut rag enabled

RIBEIRO to manufacture cigarettes without paying the federal excise tax because regulatory authorities would have no record of tobacco coming in to BELCORP. The "off books" cut rag tobacco allowed RIBEIRO to produce cigarettes without paying the required FET and then allowed RIBEIRO to sell the cigarettes made from the "off books" cut rag to customers without the required records in violation of the CCTA, and avoiding the required USDA fees and state escrow deposits. In August to October 2008, RIBEIRO purchased and picked up three tractor-trailer loads of cut rag tobacco without any paperwork (no invoices or documents showing his receipt of this product) as required by TTB. Each of these "off-book" transactions were conducted without the required record keeping, and utilized interstate carriers, mailings, faxes and phone calls. RIBEIRO and BELCORP failed to report to the Alcohol and Tobacco, Tax and Trade Bureau, manufactured tobacco removals in excess of 140,000,000 cigarette sticks, resulting in underreporting and an additional tax due in excess of $3,000,000. In addition, during the 2008 and 2009 calendar years, RIBEIRO and BELCORP filed numerous false and fraudulent excise tax returns, and underreported their excise tax liability.

33.   BELCORP, ROBERTO RICIERI RIBEIRO, and PLAYERS INTERNATIONAL SERVICE CORPORATION paid for the cut rag tobacco, in part, with manufactured tobacco products and luxury vehicles delivered to the Western District of Virginia by PLAYERS INTERNATIONAL SERVICE CORPORATION.

34.   On or about December 08, 2008, ROBERTO RIBEIRO directed MARK RICHARD SPEARS to provide false BELCORP invoices to CE #2, located in the Western District of Virginia. These false invoices were intended to be provided to the Alcohol and

Tobacco, Tax and Trade Bureau auditors that were concurrently conducting a civil audit of BELCORP operations. These false invoices also came with instructions from RIBEIRO that the original invoices were to be destroyed.

### The CHIP FET Increase Scheme to Evade FET and MSA

35.  On February 4, 2009, Congress passed Public Law 111-3, The Children's Health Insurance Program Reauthorization Act of 2009, which increased the FET on cigarettes weighing less than 3 pounds per 1,000 from $19.50 to $50.33 per 1,000 cigarettes. These increased tax rates were effective April 1, 2009. This increased the FET due on a case of cigarettes from $234.00 to $603.60. The law imposed a floor stocks tax (FST) on all tobacco products (except large cigars), cigarette papers and cigarette tubes held for sale on April 1, 2009. The FST for a case of cigarettes was approximately $369.60. Beginning in March 2009, RIBEIRO, SPEARS, and STEWART attempted to hide in excess of 1,000 cases of BELCORP cigarettes to avoid the FST. RIBEIRO, SPEARS, and STEWART went looking for, and found, unlicensed warehouses located in Mississippi and Tennessee where they could store their manufactured product. Unbeknownst to them, the individuals they had found to conceal their product were cooperating government witnesses. By moving inventory to the unlicensed warehouses, the defendants would be able to realize the increased portion of the federal excise tax rate as profit to them. The potential profit was $369.60 per case, or a total of $369,600.00 for the 1,000 cases they attempted to conceal.

36.  As directed by SPEARS and RIBEIRO, the cooperating government witness moved the product into normal commerce channels and reported to the respective states, 5-20% of

the product actually sold.  The required monthly state tax reports were mailed to the respective states.  These reports underreported the required MSA escrow deposits due.

37.    Ultimately, BELCORP reported 691 cases of the above mentioned product to TTB for the FET due.  No such reporting was ever done for any of the MSA deposits required by the states.

### Evasion Of USDA Fees By BELCORP

38.    The Fair and Equitable Tobacco Reform Act (FETRA) of 2004 allowed the United States Department of Agriculture (USDA) to assess a "buy out fee" for cigarettes sold in the United States.  The USDA fee for 2007 was $0.50 per carton, for 2008 was $0.55 per carton, for 2009 $0.55 per carton, and for 2010 was $0.60 per carton, and is projected in 2011 to be $0.63 per carton.  The USDA uses the returns provided to TTB regarding removals of tobacco products from internal revenue bond as a basis for the assessment of this fee.   The cut rag transactions described above conducted at the direction of BELCORP for the August 2008 to April 2009 period required BELCORP to pay the USDA assessment due on the cigarettes manufactured by BELCORP from the cut rag tobacco obtained from CE #2, and the "off-books" transaction enabled BELCORP to evade the assessment.

### In 2008, RIBEIRO, SPEARS, BELCORP OF AMERICA, INC. And Another Corporate Entity Participated In The Delivery Of Cigarettes To CE #2 Based On False Invoices

39.    On or about September 23, 2008, BELCORP OF AMERICA, INC. caused to be delivered to CE #2, in the Western District of Virginia, 580 cases of BELCORP cigarettes, of which 52 cases were reflected on the invoice of another corporate entity

controlled by RIBEIRO dated September 23, 2008, and 528 cases were off invoice. The invoice was false.

40.   On or about October 6, 2008, BELCORP OF AMERICA, INC. caused to be delivered to CE #2, in the Western District of Virginia, 841 cases of BELCORP cigarettes, of which 313 cases were reflected on invoice of another corporate entity controlled by RIBEIRO dated October 4, 2008, and 528 cases were off invoice. The invoice was false.

41.   All in violation of Title 18, United States Code, Section 371.

**COUNT 2**
(18 U.S.C. § 1956(h))
(Conspiracy to Commit Money Laundering)

1.   The allegations contained in Count One are hereby realleged and incorporated by reference as though set forth in full.

2.   From in or about February 2007, and continuing up to and including February 23, 2010, in the Western District of Virginia and elsewhere, the defendants, ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS, BELCORP OF AMERICA, INC., and PLAYERS INTERNATIONAL SERVICE CORPORATION, did knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a.   to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud, wire fraud and violations of the Contraband Cigarette Trafficking Act, with the intent to promote the carrying on of specified

unlawful activity, that is mail fraud, wire fraud and violations of the Contraband Cigarette Trafficking Act, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b.   to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, mail fraud, wire fraud and violations of the Contraband Cigarette Trafficking Act, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

c.   to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is mail fraud, wire fraud and violations of the Contraband Cigarette Trafficking Act, such property having been derived from a specified unlawful activity, that is, mail fraud, wire fraud and violations of the Contraband Cigarette Trafficking Act, in violation of Title 18, United States Code, Section 1957.

## WAYS, MEANS, AND MANNER OF THE CONSPIRACY

3.   The ways, means, and manner used to accomplish the objectives of the conspiracy included, among others, the following:

a.   Members of the conspiracy sold and shipped cigarettes using false invoices or no invoices, in violation of Title 18 United States Code §§ 2342 and 2343.

b.   Members of the conspiracy obtained raw tobacco for use in the manufacture of cigarettes in exchange for cigarettes shipped without invoices or other required documentation, and in exchange for vehicles.

c.   Members of the conspiracy directed and aided and abetted the filing of false reports of cigarette sales into the States of Kentucky, North Carolina, South Carolina and Tennessee, which reports were filed with such States by use of the U.S. mails, in violation of Title 18 United States Code § 1341.

d.   Members of the conspiracy communicated directions by telephone and other wire communication devices in furtherance of their scheme or artifice to defraud, in violation of Title 18 U.S.C. § 1343.

e.   Members of the conspiracy obtained proceeds from the sale of cigarettes distributed in furtherance of their scheme to defraud, and used the proceeds of such sales in part to manufacture additional cigarettes for distribution in the ongoing scheme to defraud.

f.   Members of the conspiracy created and operated several business entities, opened bank accounts in their own names and in the names of the business entities and, using the financial institutions, transferred funds between such entities in order to promote and conceal their illegal activities, and to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of their illegal acts.

g.    Members of the conspiracy engaged in the conduct contained in the allegations

charged in the following counts of this Indictment, which are hereby incorporated

by reference as though set forth in full.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, in addition to the

allegations in Count One incorporated in this Count 2,  the defendants committed the

following overt acts, among others, in the Western District of Virginia and elsewhere:

4.    ROBERTO RICIERI RIBEIRO established bank accounts in the name of companies

that invoiced the sale of BELCORP cigarettes in order to receive payment for the

cigarette transactions, as follows:

a.    Banc Enterprise Corp., Bank of America, Account Number xxxx xxxx 9323

(hereinafter described as "the Banc Enterprises Nevada account" or "BE NV

9323.")

b.    Banc Enterprise Corp., Bank of America, Checking Acct. # xxxx xxxx 4792

(hereinafter described as "the Banc Enterprises Florida account" or BE FL

4292.")

c.    BELCORP OF AMERICA, INC., Wachovia Bank, Account Number

xxxxxxxxx5585 (hereinafter sometimes described as "BELCORP Wach 5585.)

d.    BELCORP OF AMERICA, INC., Bank of America, Account Number xxxx xxxx

6386 (hereinafter sometimes described as "BELCORP BofA 6386.").

5.    During the period on or about February 5, 2007 to on or about February 19, 2010, the

conspiracy stated at Count One of this Indictment and its objectives (mail fraud, wire

fraud and violation of the Contraband Cigarette Trafficking Act) generated payments from CE #1 and from CE #2 to BELCORP OF AMERICA, INC. and an affiliated corporate entity.  The payments were made by check or wire transfer to one of the above accounts in a total amount exceeding approximately $10,000,000.

6.   During the period on or about February 5, 2007 to on or about January 28, 2009, CE #1 and CE #2 sent approximately $6,772,737 of the above described $10,000,000 of proceeds to an affiliated corporate entity at Bank of America, Account Number xxxx xxxx 9323 (the Banc Enterprises Nevada account).  After receipt, the proceeds were commingled with other funds in the accounts, then quickly transferred (often on the same day) to other accounts including another Banc Enterprises Corp. account, Bank of America Checking Acct. # xxxx xxxx 4792 (the Banc Enterprises Florida account) or other RIBEIRO controlled accounts, then further commingled and further transferred to other accounts or recipients, including accounts maintained by BELCORP OF AMERICA, INC.

7.   On or about the dates stated below, a portion of the approximately $10,000,000 of SUA proceeds was transferred to BELCORP OF AMERICA, INC., Wachovia Bank, Account Number xxxxxxxxx5585 or to BELCORP OF AMERICA Bank of America, Account Number xxxx xxxx 6386 from the Banc Enterprises Florida account or from other RIBEIRO controlled accounts, or sent to the BELCORP accounts directly by CE #1 and CE #2.  The proceeds were then further commingled with other funds in the account and thereafter used, in whole or in part and in conjunction with funds in the Banc Enterprises Florida account, to obtain materials for or pay expenses related to the manufacture, sale and distribution of cigarettes, including the sale and distribution of

cigarettes to CE #2 in the Western District of Virginia:

| From | To | Date | Amount |
|---|---|---|---|
| BE FL 494792 | BELCORP Wach 5585 | 12/10/2007 | $20,500 |
| BE FL 494792 | BELCORP Wach 5585 | 12/18/2007 | $33,900 |
| BE FL 494792 | BELCORP Wach 5585 | 2/27/2008 | $84,500 |
| BE FL 494792 | BELCORP Wach 5585 | 4/15/2008 | $500,000 |
| BE FL 494792 | BELCORP Wach 5585 | 5/20/2008 | $37,000 |
| BE NV 9323 | BELCORP Wach 5585 | 6/4/2008 | $30,000 |
| PLAYERS INTERNATIONAL SERVICE CORPORATION Ocean 9205 | BELCORP Wach 5585 | 6/6/2008 | $42,000 |
| BE FL 494792 | BELCORP Wach 5585 | 6/20/2008 | $90,000 |
| BE FL 494792 | BELCORP Wach 5585 | 6/26/2008 | $76,000 |
| BE FL 494792 | BELCORP Wach 5585 | 7/2/2008 | $15,000 |
| BE FL 494792 | BELCORP Wach 5585 | 7/2/2008 | $12,000 |
| BE FL 494792 | BELCORP Wach 5585 | 7/16/2008 | $101,000 |
| BE FL 494792 | BELCORP Wach 5585 | 7/23/2008 | $6,000 |
| BE FL 494792 | BELCORP Wach 5585 | 7/31/2008 | $28,700 |
| BE FL 494792 | BELCORP Wach 5585 | 9/16/2008 | $182,500 |
| BE FL 494792 | BELCORP Wach 5585 | 9/19/2008 | $160,000 |
| BE FL 494792 | BELCORP Wach 5585 | 9/24/2008 | $50,000 |
| BE FL 494792 | BELCORP Wach 5585 | 10/17/2008 | $30,000 |
| BE FL 494792 | BELCORP Wach 5585 | 10/23/2008 | $75,000 |
| BE FL 494792 | BELCORP Wach 5585 | 10/24/2008 | $50,000 |
| BE FL 494792 | BELCORP Wach 5585 | 11/12/2008 | $19,000 |
| BE FL 494792 | BELCORP Wach 5585 | 11/14/2008 | $54,000 |
| BE FL 494792 | BELCORP Wach 5585 | 12/1/2008 | $46,500 |
| BE FL 494792 | BELCORP Wach 5585 | 12/18/2008 | $28,000 |
| BE FL 494792 | BELCORP Wach 5585 | 12/31/2008 | $16,440 |
| CE #2 | BELCORP Wach 5585 | 1/20/2009 | $302,940 |
| BE NV 9323 | BELCORP Wach 5585 | 1/22/2009 | $20,000 |
| BE NV 9323 | BELCORP Wach 5585 | 1/28/2009 | $50,000 |
| BE NV 9323 | BELCORP Wach 5585 | 1/29/2009 | $50,000 |
| BE NV 9323 | BELCORP Wach 5585 | 1/29/2009 | $40,000 |
| CE #2 | BELCORP Wach 5585 | 2/4/2009 | $216,315 |
| CE #2 | BELCORP Wach 5585 | 2/17/2009 | $285,000 |

| CE #2 | BELCORP Wach 5585 | 2/24/2009 | $238,830 |
|-------|-------------------|-----------|----------|
| CE #2 | BELCORP Wach 5585 | 3/2/2009 | $200,000 |
| CE #2 | BELCORP Wach 5585 | 3/5/2009 | $60,750 |
| CE #2 | BELCORP Wach 5585 | 3/11/2009 | $112,860 |
| CE #2 | BELCORP Wach 5585 | 3/23/2009 | $114,655 |
| CE #2 | BELCORP Wach 5585 | 3/30/2009 | $328,890 |
| CE #2 | BELCORP BofA 6386 | 5/27/2009 | $43,620 |
| CE #2 | BELCORP BofA 6386 | 5/27/2009 | $50,000 |
| CE #2 | BELCORP BofA 6386 | 6/1/2009 | $55,504 |
| CE #2 | BELCORP BofA 6386 | 6/16/2009 | $121,296 |
| CE #2 | BELCORP BofA 6386 | 6/30/2009 | $70,000 |
| CE #2 | BELCORP BofA 6386 | 7/27/2009 | $302,965 |
| CE #2 | BELCORP BofA 6386 | 7/28/2009 | $91,260 |
| CE #1 | BELCORP BofA 6386 | 11/3/2009 | $231,984 |
| CE #1 | BELCORP BofA 6386 | 2/1/2010 | $240,576 |
| CE #1 | BELCORP BofA 6386 | 2/19/2010 | $128,880 |

8.    On or about the dates stated below, cigarettes manufactured by BELCORP OF AMERICA, INC, using the proceeds of unlawful activity were sent to CE #2 in the Western District of Virginia, as follows:

| Cases shipped | Date received by CE #2 in WDVA |
|---------------|-------------------------------|
| 162 | 9/22/2008 |
| 52 | 9/23/2008 |
| 12 | 9/29/2008 |
| 138 | 9/30/2008 |
| 313 | 10/6/2008 |
| 120 | 10/9/2008 |
| 156 | 10/15/2008 |
| 563 | 10/23/2008 |
| 246 | 10/28/2008 |
| 75 | 11/5/2008 |
| 10 | 11/12/2008 |
| 564 | 3/4/2009 |
| 198 | 3/10/2009 |

| 103 | 3/18/2009 |
|-----|-----------|
| 577 | 3/27/2009 |
| 80  | 5/19/2009 |
| 112 | 5/28/2009 |
| 131 | 6/16/2009 |
| 80  | 6/19/2009 |
| 191 | 8/3/2009  |
| 274 | 8/6/2009  |
| 270 | 8/10/2009 |

9.     In 2008 and 2009, RIBEIRO, BELCORP , PLAYERS INTERNATIONAL SERVICE

CORPORATION, SPEARS and companies owned or controlled by SPEARS sent

numerous invoices or other documents related to shipments of cigarettes by facsimile

machine to CE #2, directing that payment be made to the Banc Enterprises Nevada

account or to one of the above described BELCORP OF AMERICA, INC. accounts.

CE #2 made payments by wire transfer as directed.  Each facsimile transmission was

received by CE #2 in the Western District of Virginia.

10.     Vehicles registered to or shipped by PLAYERS INTERNATIONAL SERVICE

CORPORATION were delivered to CE #2 in the Western District of Virginia as partial

or full payment for cut rag tobacco used by BELCORP OF AMERICA, INC. to

manufacture cigarettes that were subsequently sold or transferred by BELCORP OF

AMERICA, INC. to CE #2 and, as agreed, not reported by CE #2 to the States where

CE #2 sold the cigarettes, as detailed in Count 1 of this Indictment.

a.     On or about October 30, 2008, BELCORP OF AMERICA, INC. delivered an

Aston Martin vehicle registered to PLAYERS INTERNATIONAL SERVICE

CORPORATION to CE #2 as partial payment for cut rag tobacco. The vehicle was received by CE #2 in the Western District of Virginia.

b.    On or about December 11, 2008, BELCORP OF AMERICA, INC. delivered a 2007 Lamborghini sports car registered to PLAYERS INTERNATIONAL SERVICE CORPORATION to CE #2 in Alabama, as partial payment for cut rag tobacco. Subsequently, on or about April 2, 2009, ROBERTO RIBEIRO sent the vehicle title to CE #2, by Federal Express. The Federal Express envelope stated that it was sent by ROBERTO RIBEIRO, FedEx Account Number 251504237, Phone Number 305-597-0001, PLAYERS INTERNATIONAL SERVICE CORPORATION, 4101 NW 25th Street, Miami, FL 33172.

c.    On or about May 30, 2009, BELCORP OF AMERICA, INC. delivered a Cadillac Escalade to CE #2 as partial payment for cut rag tobacco. The vehicle was registered to PLAYERS INTERNATIONAL SERVICE CORPORATION, delivered to CE #2 using a flat bed truck registered to PLAYERS INTERNATIONAL SERVICE CORPORATION and was received by CE #2 in the Western District of Virginia.

d.    On or about June 11, 2009, BELCORP OF AMERICA, INC. delivered a Mercedes sedan to CE #2 as payment for cut rag tobacco. The vehicle was delivered using a flat bed truck registered to PLAYERS INTERNATIONAL SERVICE CORPORATION and was received by CE #2 in the Western District of Virginia.

11.    On or about December 8, 2008, SPEARS asked CI #2 to create false invoices to account for off invoice cigarettes previously sold by BELCORP OF AMERICA, INC,

to CE #1.  CE #2 created the false invoices as SPEARS requested.  In or about January, 2009, RIBEIRO directed CI #1 to pay $215,460 to CE #2 using two checks, one to pay BELCORP for the off invoice cigarettes delivered to CE #1 in 2008 and one to pay CE #2 for producing the false invoices to conceal the off invoice transactions.  CI #1 prepared the two checks as directed and delivered them to RIBEIRO.  After receiving the checks, on or about January 26, 2009, RIBEIRO sent the checks to CE #2 by overnight mail with instructions to CE #2 to further transfer the funds for the off invoice shipments to the Banc Enterprises Nevada account.  The two checks were received by CE #2 in the Western District of Virginia and, on or about January 29, 2009, CE #2 transferred $170,880 by wire transfer to the Banc Enterprises Nevada account as directed by RIBEIRO.

12.   In April and May of 2009, MARK RICHARD SPEARS and ROBERTO RICIERI RIBEIRO directed CE #2 to make payments resulting from the CHIP FET tax increase scheme to third parties as more fully described in Count 1.  The payments were for off invoice transactions, and enabled SPEARS, RIBEIRO, and BELCORP to conceal the transactions by ensuring that funds resulting from the transactions did not come back directly to the defendants.  Pursuant to these third party payments:

a.   On or about April 14, 2009, SPEARS told CI #2, by telephone, that RIBEIRO wanted CI #2 to send money to the BELCORP MSA escrow account for the State of South Carolina.  CE #2 owed BELCORP for cigarettes sent to CE #2 off invoice, as part of a scheme to evade the FET increase that went into effect on April 1, 2009;

b.      On or about April 29, 2009, SPEARS told CI #2, by telephone, that RIBEIRO wanted CI #2 to send money to the BELCORP MSA escrow account for the State of North Carolina that CE #2 owed for cigarettes sent by BELCORP to CE #2 off invoice, as part of a scheme to evade the FET increase that went into effect on April 1, 2009;

c.      In or about May, 2009, SPEARS again discussed, by telephone, payment by CE #2 for off invoice cigarettes sent to CE #2 as part of the scheme to evade the FET increase that went into effect on April 1, 2009.  SPEARS asked that CE #2 send the funds to a title company in furtherance of RIBEIRO's purchase of property located in Nevada.

13.    Besides the bank accounts listed above that were used to receive the initial payments for the illegal cigarette transactions, ROBERTO RICIERI RIBEIRO established other bank accounts to further layer the payments from the illegal cigarette transactions and conceal their source.  RIBEIRO, BELCORP, and PLAYERS INTERNATIONAL SERVICE CORPORATION conducted hundreds of financial transactions affecting interstate commerce in the accounts to receive the initial payments listed above and in these other accounts, which include but are not limited to:

a.      PLAYERS INTERNATIONAL SERVICE CORPORATION, Bank of America, Account Number xxxxx xxxx 8787;

b.      PLAYERS INTERNATIONAL SERVICE CORPORATION, Ocean Bank, Account Number xxxxx9205;

c.      Players International Group, LLC, Bank of America, Account Number xxxx xxxx 6727;

d.      Yachts US, Inc., Bank of America, Account Number xxxx xxxx 8813;

e.      Yachts US, Inc., Ocean Bank, Account Number xxxxx9605;

f.      Roberto RIBEIRO, Bank of America, Checking Account Number xxxx xxxx 8513.

14.    All in violation of Title 18 United States Code § 1956 (h).


## COUNTS 3 THROUGH 57
(18 U.S.C. § 1341)
(Mail Fraud)

1.    The allegations contained in Count One are hereby realleged and incorporated by reference as though set forth in full.

2.    On or about the dates set forth below, in the Western District of Virginia, ROBERTO RICIERI RIBEIRO, BELCORP OF AMERICA, INC., MARK RICHARD SPEARS, TIMOTHY ROSS STEWART, the defendants, with the intent to defraud, devised a scheme or artifice to defraud and to obtain money and property by means of false pretenses, representations, and promises, to wit: false reporting of BELCORP cigarettes sales to the States of Kentucky, North Carolina, South Carolina and Tennessee, for the purpose of reducing BELCORP's required annual escrow deposit; and to defeat each State's right and opportunity to remedy such false under reporting and reduced escrow deposit by continued false reporting to the States and concealment thereof.

3.    For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, the defendant(s), in the Western District of Virginia, knowingly caused to be delivered by mail or by private or commercial interstate carrier

according to the direction thereon a matter, specifically monthly reports to the States of

sales of BELCORP cigarettes into such States, as more fully described below:

| Count | Date | Mailing in the Western District of Virginia |
|---|---|---|
| 3 | February, 2008 | False report to the State of Kentucky |
| 4 | February, 2008 | False report to the State of Tennessee |
| 5 | March, 2008 | False report to the State of Kentucky |
| 6 | March, 2008 | False report to the State of Tennessee |
| 7 | April, 2008 | False report to the State of Kentucky |
| 8 | April, 2008 | False report to the State of Tennessee |
| 9 | May, 2008 | False report to the State of Kentucky |
| 10 | May, 2008 | False report to the State of Tennessee |
| 11 | June, 2008 | False report to the State of Kentucky |
| 12 | June, 2008 | False report to the State of Tennessee |
| 13 | July, 2008 | False report to the State of Kentucky |
| 14 | July, 2008 | False report to the State of Tennessee |
| 15 | August, 2008 | False report to the State of Kentucky |
| 16 | August, 2008 | False report to the State of Tennessee |
| 17 | September, 2008 | False report to the State of Kentucky |
| 18 | September, 2008 | False report to the State of Tennessee |
| 19 | October, 2008 | False report to the State of Kentucky |
| 20 | October, 2008 | False report to the State of Tennessee |
| 21 | November, 2008 | False report to the State of Kentucky |
| 22 | November, 2008 | False report to the State of Tennessee |
| 23 | December, 2008 | False report to the State of Kentucky |
| 24 | December, 2008 | False report to the State of North Carolina |
| 25 | December, 2008 | False report to the State of South Carolina |
| 26 | December, 2008 | False report to the State of Tennessee |
| 27 | January, 2009 | False report to the State of Kentucky |
| 28 | January, 2009 | False report to the State of South Carolina |
| 29 | January, 2009 | False report to the State of Tennessee |
| 30 | February, 2009 | False report to the State of Kentucky |
| 31 | February, 2009 | False report to the State of Tennessee |
| 32 | March, 2009 | False report to the State of Kentucky |
| 33 | March, 2009 | False report to the State of Tennessee |
| 34 | April, 2009 | False report to the State of Kentucky |
| 35 | April, 2009 | False report to the State of Tennessee |
| 36 | May, 2009 | False report to the State of Kentucky |
| 37 | May, 2009 | False report to the State of Tennessee |
| 38 | June, 2009 | False report to the State of Kentucky |
| 39 | June, 2009 | False report to the State of Tennessee |
| 40 | July, 2009 | False report to the State of Kentucky |
| 41 | July, 2009 | False report to the State of Tennessee |
| 42 | August, 2009 | False report to the State of Kentucky |
| 43 | August, 2009 | False report to the State of Tennessee |
| 44 | September, 2009 | False report to the State of Kentucky |
| 45 | September, 2009 | False report to the State of Tennessee |
| 46 | October, 2009 | False report to the State of Kentucky |
| 47 | October, 2009 | False report to the State of Tennessee |
| 48 | November, 2009 | False report to the State of Kentucky |

| 49 | November, 2009 | False report to the State of South Carolina |
| 50 | November, 2009 | False report to the State of Tennessee |
| 51 | December, 2009 | False report to the State of Kentucky |
| 52 | December, 2009 | False report to the State of North Carolina |
| 53 | December, 2009 | False report to the State of South Carolina |
| 54 | December, 2009 | False report to the State of Tennessee |
| 55 | January, 2010 | False report to the State of Kentucky |
| 56 | January, 2010 | False report to the State of South Carolina |
| 57 | January, 2010 | False report to the State of Tennessee |

4.     All in violation of Title 18, United States Code, Section 1341.


## COUNTS 58 THROUGH 163
### (18 U.S.C. § 134)
### (Wire Fraud)

1.     The allegations contained in Count One are hereby realleged and incorporated by reference as though set forth in full.

2.     On or about the dates set forth below, in the Western District of Virginia, the defendant(s) listed below, with the intent to defraud, devised a scheme or artifice to defraud and to obtain money and property by means of false pretenses, representations, and promises, to wit:  false reporting of BELCORP cigarettes sales to the States of Kentucky, North Carolina, South Carolina and Tennessee, as described at Count One of this Indictment, for the purpose of reducing BELCORP's required annual escrow deposit; and to defeat each State's right and opportunity to remedy such false under reporting and reduced escrow deposit by continued false reporting to the States and concealment thereof.

3.     For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, the defendant(s) listed below as to each count, in the Western District of Virginia, knowingly transmitted or caused to be transmitted by means

of wire, radio, or television communication in interstate or foreign commerce, certain writings, signs, signals, pictures and sounds for the purpose of executing such scheme or and artifice, specifically facsimile transmissions to CE #2 in the Western District of Virginia executing the scheme to defraud, as more fully described below:

| Count | Date | Defendant(s) | Invoice # | From | Through |
|---|---|---|---|---|---|
| 58 | 1/15/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 001-08 | PLAYERS 01/15/08 5:58am 305-597-0500 | |
| 59 | 1/30/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 002-08 | PLAYERS 01/30/08 2:48pm 305-597-0500 | |
| 60 | 2/7/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 003-08 | PLAYERS 2/07/08 2:03pm 305-597-0500 | |
| 61 | 2/11/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 004-08 | PLAYERS 2/11/08 2:23pm 305-597-0500 | |
| 62 | 2/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 005-08 | PLAYERS 2/18/08 12:19pm 305-597-0500 | |
| 63 | 3/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 006-08 | PLAYERS 3/18/08 10:49am 305-597-0500 | |
| 64 | 4/14/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 007-09 | PLAYERS 4/14/08 9:50am 305-597-0500 | |
| 65 | 4/14/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 007-08 | PLAYERS 4/14/08 12:13 pm 305-597-0500 | |
| 66 | 4/15/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | Wire Instructions | PLAYERS 04/15/08 2:58pm 305-597-0500 | |

| Count | Date | Defendant(s) | Invoice # | From | Through |
|---|---|---|---|---|---|
| 67 | 4/22/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 008-08 | PLAYERS 4/22/08 9:05am 305-597-0500 | |
| 68 | 5/9/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 009-08 | PLAYERS 5/09/08 10:24am 305-597-0500 | |
| 69 | 5/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 010-08 | PLAYERS 5/16/08 9:38am 305-597-0500 | |
| 70 | 5/19/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 011-08 | Players Car Rental 5/19/08 12:38pm 305 | |
| 71 | 6/2/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION, MARK RICHARD SPEARS | BT 010-08 | PLAYERS 5/31/08 7:39pm 305-597-0500 | SS&P Dist. 6/02/08 9:49am 352-481-9203 |
| 72 | 6/7/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 013-08 | PLAYERS 6/07/08 8:31pm 305-597-0500 | |
| 73 | 6/11/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 014-08 | PLAYERS 6/11/08 8:40pm 305-597-0500 | |
| 74 | 6/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 015-08 | PLAYERS 6/16/08 7:49pm 305-597-0500 | |
| 75 | 6/23/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 016-08 | BELCORP 6/24/08 11:20am 305-436-9455 | |
| 76 | 6/24/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 016-08 | BELCORP 6/24/08 10:35am 305-436-9455 | |
| 77 | 6/29/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION | BT 017-08 | PLAYERS 6/29/08 9:54pm 305-597-0500 | BELCORP 7/1/09 10:30am 304-436-9455 |
| 78 | 6/30/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 021-08 | BELCORP 6/30/08 9:59am 305-436-9455 | |
| 79 | 7/1/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 022-08 | BELCORP 7/01/08 10:28am 305-436- | |

| Count | Date | Defendant(s) | Invoice # | From | Through |
|-------|------|--------------|-----------|------|---------|
| | | | | 9455 | |
| 80 | 7/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 023-08 | BELCORP 7/16/08 2:48pm 305-436-9455 | |
| 81 | 7/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 024-08 | BELCORP 7/16/08 2:49pm 305-436-9455 | |
| 82 | 7/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 025-08 | BELCORP 7/16/08 2:48pm 305-436-9455 | |
| 83 | 7/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 026-08 | BELCORP 7/18/08 4:44pm 305-436-9455 | |
| 84 | 7/31/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 028-08 | BELCORP 7/31/08 12:27pm 305-436-9455 | |
| 85 | 8/6/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 029-08 | BELCORP 8/06/08 9:48am 305-436-9455 | |
| 86 | 8/7/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 0309-08 | BELCORP 8/7/08 1:44pm 305-436-9455 | |
| 87 | 8/11/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 031-08 | BELCORP 8/11/08 5:34pm 305-436-9455 | |
| 88 | 8/12/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 032-08 | BELCORP 8/12/08 10:48am 305-436-9455 | |
| 89 | 8/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 034-08 | BELCORP 8/18/08 8:49am 305-436-9455 | |
| 90 | 8/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 033-08 | BELCORP 8/18/08 8:49am 305-436-9455 | |
| 91 | 8/25/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 035-08 | BELCORP 8/25/08 8:47am 305-436-9455 | |
| 92 | 8/28/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 036-08 | BELCORP 8/28/08 9:27am 305-436-9455 | |
| 93 | 9/2/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 038-08 | MARK SPEARS SS&P Dist. 9/02/08 10:43am 352-481-9203 | BELCORP 9/03/08 10:26am 305-436-9455 |
| 94 | 9/2/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 038-08 | MARK SPEARS SS&P Dist. 9/02/08 10:43am 352-436-9455 | BELCORP 9/03/08 10:26am 305-436-9455 |
| 95 | 9/3/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 037-08 | MARK SPEARS SS&P Dist. 9/02/08 10:43am 352-481-9203 | BELCORP 9/03/08 10:26am 305-436-9455 |
| 96 | 9/10/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 041-08 | BELCORP 9/10/08 9:00am 304-436-9455 | |

| Count | Date | Defendant(s) | Invoice # | From | Through |
|---|---|---|---|---|---|
| 97 | 9/10/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 040-08 | BELCORP 9/08/08 9:26am 305-436-9455 | |
| 98 | 9/15/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 042-08 | BELCORP 9/15/08 9:45am 305-436-9455 | MARK SPEARS SS&P Dist. 9/15/08 9:56am |
| 99 | 9/16/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Hand Written Invoice | BELCORP 9/16/08 305-436-9455 | |
| 100 | 9/17/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 045-08 | BELCORP 9/17/08 8:40am 305-436-9455 | |
| 101 | 9/24/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 046-08 | BELCORP 9/24/08 9:51am 305-436-9455 | |
| 102 | 9/24/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 046-08 | BELCORP 9/24/08 9:51am 305-436-9455 | |
| 103 | 9/29/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 048-08 | BELCORP 9/24/08 8:32am 305-436-9455 | |
| 104 | 10/6/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 050-08 | BELCORP 10/06/08 9:18am 305-436-9455 | MARK SPEARS SS&P Dist. 10/06/08 9:35am |
| 105 | 10/6/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 050-08 | BELCORP 10/06/08 9:14am 305-436-9455 | |
| 106 | 10/8/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 051-08 | BELCORP 10/08/08 10:11am 305-436-9455 | |
| 107 | 10/8/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | BT 052-08 | BELCORP 10/08/08 10:12am 305-436-9455 | |
| 108 | 10/14/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 053-08 | BELCORP 10/14/08 11:13am 305-436-9455 | MARK SPEARS SS&P Dist. 10/14/08 11:42am  352-481-9203 |
| 109 | 10/20/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | BT 054-08 | BELCORP 10/20/08 11:59am 305-436-9455 | MARK SPEARS SS&P Dist. 10/20/08 12:23pm 352-481-9203 |
| 110 | 10/24/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Packing List | BELCORP 10/24/08 3:24pm 305-436-9455 | MARK SPEARS SS&P Dist. 10/24/08 3:37pm 352-481-9203 |

| Count | Date | Defendant(s) | Invoice # | From | Through |
|-------|------|--------------|-----------|------|---------|
| 111 | 11/4/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Packing List | MARK SPEARS SS&P Dist. 11/04/08 12:12pm 352-481-9203 | BELCORP 11/04/08 1:00pm 305-436-9455 |
| 112 | 11/10/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Credit Note | MARK SPEARS SS&P Dist. 11/10/08 12:29pm 352-481-9203 | BELCORP 11/10/08 12:48pm 304-436-9455 |
| 113 | 11/13/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | PROFO RMA | BELCORP 11/13/08 12:08pm 305-436-9455 | MARK SPEARS SS&P Dist. 11/13/08 12:52pm 352-481-9203 |
| 114 | 11/30/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 73562 | MARK SPEARS SS&P Dist. 11/30/08 3:03pm 352-481-9203 | R.R.R. 11/30/08 3:42pm |
| 115 | 12/11/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 73579 | BELCORP 12/11/08 10:52am 305-436-9455 | |
| 116 | 12/18/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 73589 | BELCORP 12/18/08 12:pm 305-436-9455 | |
| 117 | 12/23/2008 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 75393 | MARK SPEARS 12/08/08 8:54am 352-481-9203 | |
| 118 | 1/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 75393 | BELCORP 1/02/09 11:32am 305-436-9455 | MARK SPEARS 1/02/2009 10:41am 352-481-9203 |
| 119 | 1/5/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91001 | BELCORP 1/05/09 11:53am 305-436-9455 | 877-430-1576 |
| 120 | 1/8/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91014 | BELCORP 1/08/09 12:24pm 305-436-9455 | 877-430-1576 |
| 121 | 1/12/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 91022 | BELCORP 1/12/09 12:35pm 305-436-9455 | MARK SPEARS 1/12/09 12:32pm 352-481-9203 |
| 122 | 1/19/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91029 | BELCORP 1/19/09 3:14pm 305-436-9455 | |
| 123 | 1/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91042 | BELCORP 1/26/09 10:52am 305-436-9455 | |
| 124 | 1/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | | BELCORP 1/26/09 2:48pm 305-436-9455 | |
| 125 | 1/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91042 | BELCORP 1/26/09 10:52am 305-436-9455 | |

*USAO#:2011R00159*

| Count | Date | Defendant(s) | Invoice # | From | Through |
|---|---|---|---|---|---|
| 126 | 1/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 00001-09 | BELCORP 1/26/09 2:48pm 305-436-9455 | |
| 127 | 1/27/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Wire Instructions | BELCORP 1/27/09 10:41am 305-436-9455 | |
| 128 | 1/27/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Wire Instructions | BELCORP 1/27/09 10:41am 305-436-9455 | |
| 129 | 2/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91047 | BELCORP 2/2/09 12:04pm 305-436-9455 | |
| 130 | 2/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Wire Instructions | BELCORP 2/2/09 12:04pm 305-436-9455 | |
| 131 | 2/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Wire Instructions and 91047 | BELCORP 2/02/09 12:04pm 305-436-9455 | |
| 132 | 2/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 80010 | BELCORP 2/16/09 9:51am 305-436-9455 | |
| 133 | 2/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 80010 | BELCORP 2/16/09 9:51am 305-436-9455 | |
| 134 | 3/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91128 | BELCORP 3/2/09 1:57pm 305-436-9455 | |
| 135 | 3/2/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91128 | BELCORP 3/02/09 1:57pm 305-436-9455 | |
| 136 | 3/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91171 | BELCORP 3/16/09 8:28am 305-436-9455 | |
| 137 | 3/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91171 | BELCORP 3/16/09 8:28am 305-436-9455 | |
| 138 | 3/30/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91222 | BELCORP 3/30/09 9:37am 305-436-9455 | |
| 139 | 5/11/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Wire Instructions | BELCORP 5/11/09 11:32am 305-436-9455 | 352-481-9203 |
| 140 | 5/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91317 | BELCORP 5/26/09 10:02am 305-436-9455 | |
| 141 | 5/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91301 | BELCORP 5/26/09 10:02am 305-436-9455 | |
| 142 | 6/8/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Packing List | BELCORP 6/8/09 11:40am 305-436-9455 | |

USAO#:2011R00159

| Count | Date | Defendant(s) | Invoice # | From | Through |
|-------|------|--------------|-----------|------|---------|
| 143 | 6/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91391 | BELCORP 6/16/09 9:28am 305-436-9455 | |
| 144 | 6/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Wire Instructions | BELCORP 6/16/09 9:28am 305-436-9455 | Tobacco State 6/16/09 11:00am 352-481-9203 |
| 145 | 6/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 91391 | BELCORP 6/16/09 9:28am 305-436-9455 | Tobacco State 6/16/09 11:00am 352-481-9203 |
| 146 | 6/16/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91391 | BELCORP 6/16/09 9:31am 305-436-9455 | |
| 147 | 6/19/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91400 | BELCORP 6/19/09 10:58am 305-436-9455 | |
| 148 | 6/19/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Wire Instructions and 91400 | BELCORP 6/19/09 10:59am 305-436-9455 | 352-481-9203 |
| 149 | 6/22/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Wire Instructions and 91400 | BELCORP 6/19/09 11:00am 305-436-9455 | Tobacco State 6/19/09 2:40pm 352-481-9203 |
| 150 | 7/9/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, PLAYERS INTERNATIONAL SERVICE CORPORATION, MARK RICHARD SPEARS | Wire Instructions | PLAYERS 7/09/09 5:52am 305-597-0500 | Tobacco State 7/09/09 7:04pm 352-481-9203 |
| 151 | 7/15/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | Hand Written Invoice | BELCORP 7/15/09 12:08pm 305-436-9455 | Tobacco State 7/15/09 12:25pm 352-481-9203 |
| 152 | 7/22/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91001 | BELCORP 7/22/09 3:40pm 305-436-9455 | |
| 153 | 7/22/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91014 * | BELCORP 7/22/09 3:40pm 305-436-9455 | |
| 154 | 7/29/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 91498 | BELCORP 7/29/09 9:39am 305-436-9455 | Tobacco State 7/29/09 11:27am 352-481-9203 |
| 155 | 8/10/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91517 | BELCORP 8/10/09 10:02am 305-436-9455 | |

| Count | Date | Defendant(s) | Invoice # | From | Through |
|-------|------|--------------|-----------|------|---------|
| 156 | 8/10/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91517 | BELCORP 305-436-9455 | CE #2 8/10/09 10:02am |
| 157 | 8/13/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91507 | BELCORP 8/13/09 305-436-9455 | CE #2 8/13/09 12:55pm |
| 158 | 8/13/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91498 | BELCORP 8/13/09 305-436-9455 | CE #2 8/13/09 12:55pm |
| 159 | 8/13/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91517 | BELCORP 8/13/09 305-436-9455 | CE #2 8/13/09 12:55pm |
| 160 | 8/13/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | Wire Instructions | BELCORP 8/13/09 305-436-9456 | CE #2 8/13/09 12:55pm |
| 161 | 8/21/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91517 | BELCORP 8/21/09 3:38pm 305-436-9455 | |
| 162 | 8/26/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO | 91517 | BELCORP 8/26/09 5:10pm 305-436-9455 | |
| 163 | 9/28/2009 | BELCORP OF AMERICA, INC., ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS | 91621 | BELCORP 305-436-9455 | Tobacco State 9/28/09 3:34pm 352-481-9203 |

4.      All in violation of Title 18, United States Code, Section 1343.


## COUNT 164
### (18 U.S.C. § 2342 (b))
### (Contraband Cigarette Trafficking Act)

1.      On or about September 23, 2008, in the Western District of Virginia, the defendants,

ROBERTO RICIERI RIBEIRO, MARK RICHARD SPEARS, TIMOTHY ROSS

STEWART and BELCORP OF AMERICA, INC., as principals and as aiders and

abettors, did knowingly make a false statement or representation with respect to

information required by Title 18, United States Code, § 2341 et seq., to be kept in the

records of any person who ships, sells, or distributes any quantity of cigarettes in excess

of 60,000 in a single transaction, to wit:  a false invoice in the name of an affiliated

corporation for 52 cases of BELCORP cigarettes dated September 23, 2008, when in truth and fact the defendants caused to be delivered to CE #2, in the Western District of Virginia, 580 cases of BELCORP cigarettes, and 528 cases were not reflected in the invoice.

2.   In violation of Title 18, United States Code, Section 2342(b), and 2.

## COUNT 165
### (18 U.S.C. § 2342 (b))
### (Contraband Cigarette Trafficking Act)

1.   On or about October 6, 2008, in the Western District of Virginia, the defendants, ROBERTO RICIERI RIBEIRO and BELCORP OF AMERICA, INC., as principals and as aiders and abettors, did knowingly make a false statement or representation with respect to information required by Title 18, United States Code, § 2341 et seq., to be kept in the records of any person who ships, sells, or distributes any quantity of cigarettes in excess of 60,000 in a single transaction, to wit:  a false invoice in the name of an affiliated corporation for 313 cases of BELCORP cigarettes dated October 4, 2008, when in truth and fact the defendants caused to be delivered to CE #2, in the Western District of Virginia, 841 cases of BELCORP cigarettes, and 528 cases were not reflected in the invoice.

2.   In violation of Title 18, United States Code, Section 2342(b), and 2.

## COUNTS 166 to 168
### (26 U.S.C.§ 7201
### (Willful Evasion of Federal Excise Tax)

1. The allegations in Count One of this Indictment, including those more particularly in the description of affirmative acts of evasion in the Cut Rag Scheme to Evade FET and MSA, are realleged and incorporated as if set forth in full..

2. On or about the dates listed below, in the Western District of Virginia, BELCORP OF AMERICA, INC., and ROBERTO RICIERI RIBEIRO, the defendants, as principals and as aiders and abettors, did willfully attempt to evade and defeat a large part of the federal excise tax on tobacco due and owing to the United States of America for the time periods alleged below as to each count, by filing and causing to be filed with the Alcohol and Tobacco Tax and Trade Bureau, National Revenue Center, at Cincinnati, Ohio, a false and fraudulent Excise Tax Return, Form 5000.24.  In that false return, RIBEIRO on behalf of BELCORP stated that the total number of cigarettes removed for the period and the amount of tax due and owing was as described below.  In fact, as the defendants then and there knew, the number of cigarettes removed was substantially in excess of the number reported, and a substantial tax was due and owing the United States of America.

| Count | Date of Offense | Time Period of Return | Sticks Reported Removed | Tax Reported | Actual Sticks Removed | Tax Due |
|-------|-----------------|-----------------------|-------------------------|--------------|-----------------------|---------|
| 166 | 10/27/08 | 9/16/08 to 9/25/08 | 720,000 | $14,040 | 11,796,000 | $230,022 |
| 167 | 10/27/08 | 10/1/08 to 10/15/08 | 2,340,000 | $45,630 | 15,234,000 | $253,188 |
| 168 | 11/14/08 | 10/16/08 to 10/31/08 | 1,800,000 | $35,100 | 12,768,000 | $248,876 |

3. In violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

## COUNT 169
### (18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i))
### (Money Laundering – Promotion and Concealment)

1.  On or about January 28, 2009, in the Western District of Virginia, ROBERTO RICEIRI

    RIBEIRO and BELCORP OF AMERICA, INC., as principals and as aiders and abettors,

    did knowingly conduct and attempt to conduct a financial transaction affecting interstate

    and foreign commerce, which involved the proceeds of specified unlawful activity, that is

    mail fraud and violations of the Contraband Cigarette Trafficking Act, with the intent to

    promote the carrying on of said specified unlawful activity, knowing that the transaction

    was designed in whole and in part to conceal and disguise the nature, location, source,

    ownership, and control of the proceeds of said specified unlawful activity, and that while

    conducting and attempting to conduct such financial transaction the defendant knew that

    the property involved in the financial transaction represented the proceeds of some form

    of unlawful activity, to wit:  in or about January 2009, RIBEIRO directed CI #1 to write

    two checks totaling $215,460 payable to CE #2 to pay BELCORP for  off invoice

    cigarettes delivered to CE #1 in 2008, and  to pay CE #2 to produce false invoices (so

    that BELCORP would not appear to be involved in the transactions) and  pay the

    associated state excise taxes.  CI #1 prepared the two checks as directed and delivered

    them to RIBEIRO.  On or about January 26, 2009, RIBEIRO delivered the checks to CE

    #2 in the Western District of Virginia by overnight mail, with instructions to CE #2 to

    further transfer $170,880 for the off invoice shipments to RIBEIRO's affiliated

    corporation's Nevada bank account.  The funds were wired as directed by RIBEIRO.

2.      All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i),

1956(a)(1)(B)(i), and 2.

## NOTICE OF FORFEITURE

1.      Upon conviction of one or more of the felony offenses alleged in this Indictment,

the defendants shall forfeit to the United States:

a.  any property constituting, or derived from, proceeds obtained directly or
indirectly from the commission of the scheme to defraud for which the defendant
is convicted, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

b.  any property, real or personal, involved in a violation of 18 U.S.C. §§ 1956
and/or 1957, or any property traceable to such property, pursuant to 18 U.S.C. §
982(a)(1).

2.      The property to be forfeited to the United States includes but is not limited to the

following property:

a.  **Monetary Judgment:**  Not less than $19,814,610.00 in United States currency and all
interest and proceeds traceable thereto, in that such sum in aggregate was obtained
directly or indirectly as a result of said offenses or is traceable to such property.

b.  **Business Entities, including all assets, inventory and property related thereto**
   (1) Belcorp of America, Inc.
   (2) Players International Services Corporation, dba Players Luxury Car Rentals
   (3) Players International Group LLC, dba Players Luxury Car Rentals
   (4) Yachts US, Inc., dba Players Luxury Car Rentals

c.  **Bank Accounts, all funds received and on deposit as set forth below:**

|    | Bank | Account Name | Account # |
|----|------|--------------|-----------|
| 1) | Bank of America | Roberto Ribeiro | 3667238513 |
| 2) | Bank of America | Belcorp of America Inc. | 898029946386 |
| 3) | Bank of America | Belcorp of America Inc. | 898026457946 |
| 4) | Bank of America | Belcorp of America Inc. | 898029946373 |
| 5) | Bank of America | Players International Service Corp | 229006658787 |
| 6) | Bank of America | Players International Group LLC | 229010146227 |
| 7) | Bank of America | Yachts US Inc. (dba Players Luxury Car Rental) | 229006658813 |
| 8) | Ocean Bank | Roberto Ricieri Ribeiro | 189350506 |

*USAO#:2011R00159*

|  | Bank | Account Name | Account # |
|---|---|---|---|
| 9) | Ocean Bank | Belcorp of America Inc | 195080005 |
| 10 | Ocean Bank | Belcorp of America Inc | 199973705 |
| 11 | Ocean Bank | Players International Services Corp | 180979205 |
| 12 | Ocean Bank | Yachts US Inc | 180929605 |

### d. Master Settlement Agreement Trust Account and related sub-accounts and interest account, all funds received and on deposit:

|  | Bank | Account Name | Account # |
|---|---|---|---|
| 1) | U.S. Bank | Belcorp of America | 146570000 |
| 2) | U.S. Bank | Belcorp of America | 4072011066 |

### e. Real Property

|  | Location / Address | Titled Owner | Description |
|---|---|---|---|
| 1) | 8150 NW 64th Street, Miami, FL 33166 (Belcorp Factory) | Panemera Lease, LLC | Being the same property conveyed to Panamera Lease, LLC from Olshen Overseas, Inc. by Warranty Deed dated February 1, 2010, and recorded in the Circuit Court records of Miami-Dade County, Florida, on February 26, 2010, as CFN 2010R0131460 in Deed Book 27196, at Pages 0411-0412. |
| 2) | 6624 Oxendale Av Las Vegas, NV 89139 | Millenium Business International Inc | Being the same property conveyed to Millenium Business International, Inc. from Gutemberg Silva Dos Santos, by Grant, Bargain and Sale Deed dated June 10, 2009, and recorded in the Clark County, Nevada Recorder's office, on June 26, 2009, as Instrument # 2009-0004956 |

3.     If any of the above described forfeitable property, as a result of any act or

omission of the defendant cannot be located upon the exercise of due diligence; has been

transferred or sold to or deposited with a third person; has been placed beyond the

jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above described forfeitable property pursuant to 21 U.S.C. § 853(p), including the assets described above, and including but not limited to the following assets:

**a.** **Financial Accounts**:

|     | Bank | Account Name | Account # |
|-----|------|--------------|-----------|
| 1)  | Bank of America | Belcorp NC Inc.  (FL) | 898033549410 |
| 2)  | Regions Bank | Belcorp NC Inc  (FL) | 100873934 |

**b.** **Master Settlement Agreement Trust Account**
**and related sub-accounts and interest account, all funds received and on deposit**:

|     | Bank | Account Name | Account # |
|-----|------|--------------|-----------|
| 1)  | U.S. Bank | Phoenix Industria e Comercio de Tabacos, LTDA | 146518000 |
| 2)  | U.S. Bank | Phoenix Industria e Comercio de Tabacos, LTDA | 4072011949 |
| 3)  | U.S. Bank | American Virginia Ind Com Imp Exp de Tabacos Ltda | 4072012038 |
| 4)  | U.S. Bank | JJ Mariana Exportadora Ltda | 4072018283 |
| 5)  | U.S. Bank | JJ. Marianna Exportadora e Importadora, LTDA | 146520000 |

**c.** **Real Property**

|     | Location / Address | Titled Owner | Description |
|-----|--------------------|--------------|-------------|
| 1)  | 8 Turtle Walk Key Biscayne, FL 33166 | Tahari Holdings Corp. (BVI) | Being the same property conveyed to Tahari Holdings Corp. from Australis Investments, Inc., by Warranty Deed dated May 1, 2003, and recorded in the Circuit Court records of Miami-Dade County, Florida, on May 6, 2003, as CFN 2003R0294186 in Deed Book 21219, at Pages 4226-4227 |

|   | Location / Address | Titled Owner | Description |
|---|---|---|---|
| 2) | Unit 1202<br>2 Tequesta Point Condo<br>808 Brickell Key Dr<br>Miami, FL 33131 | Laurel Trading Services Ltd | Being the same property conveyed to Laurel Trading Services Limited from Swire Pacific Holdings Inc., a Delaware corporation, by Special Warranty Deed dated January __, 1999, and recorded in the Circuit Court records of Miami-Dade County, Florida, on February 3, 1999, as CFN 99R059921 in Deed Book 18463, at Pages 807-808. |
| 3) | Unit 3219<br>Cosmopolitan West<br>3708 S Las Vegas Blvd<br>Las Vegas, NV 89108 | Robert R. Robeiro | Being the same property conveyed to Roberto Robeiro from Nevada Property 1 LLC, by Grant, Bargain and Sale Deed dated January 31, 2011, and recorded Clark County, Nevada Recorder's office on February 9, 2011, as Instrument # 201102090001103 |

A TRUE BILL, this _6th_ day of _October_____, 2011.

_Saa W. Ellis_
FOREPERSON

_Joseph W. H. Mott, AUSA, for_
TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY

USAO#:2011R00159

46